JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Frank Donato

**DEFENDANTS**
TerraVida Holistic Centers, LLC & Christine Visco, individually and as CEO of TerraVida Holistic Centers, LLC

**(b)** County of Residence of First Listed Plaintiff: Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey P. Hoyle, Esquire
1100 N. Providence Road, Suite 200
Media, PA 19063

Attorneys *(If Known)*
Gerald E. Burns, Esquire
Two Liberty Place, 50 South 16th St., Suite 3200
Philadelphia, PA 19102

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [X] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | |
| | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____
DOCKET NUMBER _____

DATE: 06/28/2021
SIGNATURE OF ATTORNEY OF RECORD: *Jeffrey P. Hoyle*

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    *Jeffrey P. Hoyle* (Must sign here)    _____
                                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A.  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

B.  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____    *Jeffrey P. Hoyle* (Sign here if applicable)    _____
                                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK DONATO | : | No.: 21-cv-2870 |
| 535 Charles Drive | : | |
| King of Prussia, PA 19406 | : | |
| v. | : | |
| TERRAVIDA HOLISTIC CENTERS, LLC | : | |
| 500 Old York Road | : | |
| Jenkintown, PA 19046 | : | |
| & | : | |
| CHRISTINE VISCO, individually and as CEO | : | |
| of TERRAVIDA HOLISTIC CENTERS, LLC | : | |
| 500 Old York Road | : | |
| Jenkintown, PA 19046 | : | JURY TRIAL DEMANDED |

## CIVIL ACTION – COMPLAINT

**I.   INTRODUCTION:**

1. Plaintiff, Frank Donato, by and through his counsel, The Law Offices of Jeffrey P. Hoyle, bring this civil action against Defendants, Christine Visco, individually and as CEO of TERRAVIDA HOLISTIC CENTERS, LLC and TERRAVIDA HOLISTIC CENTERS, LLC, under the Fair Labor Standards Act (FLSA), 29 U.S.C. §201, *et seq*., the Pennsylvania Minimum Wage Act (PaMWA), 43 P.S. §333.101, *et seq*., the Pennsylvania Wage Payment and Collection Law (PaWPCL), 43 P.S. § 260.1, *et seq*., and for unjust enrichment for failure to comply with the applicable laws during Defendants' employment of the Plaintiff from on or about July 1, 2018 through on or about July 4, 2020 as Director of Security.  In addition to deliberately misclassifying Donato as an independent contractor, Defendants required Donato to perform many tasks and duties outside the scope of the specific duties established for the Director of Security position, including whatever unrelated tasks, assignments, and duties Visco chose to direct him to undertake both on behalf of the Defendants and for her personally, requiring Plaintiff to work between 70 to 90 hours per week despite only being paid for 40 hours per week.

1

**II.     JURISDICTION AND VENUE:**

2. This Court has jurisdiction over Donato's FLSA claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b). This Court has jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(a).

3. Personal jurisdiction over Defendants exists and venue of this lawsuit properly lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b) because Defendants maintain office and retail locations and the claims arose in this judicial district.

**III.    PARTIES:**

4. Plaintiff, Frank Donato ("Donato"), is an adult individual and Pennsylvania resident residing at 535 Charles Drive, King of Prussia, PA 19406.

5. Defendant, Terra Vida Holistic Centers, LLC ("TerraVida"), is a limited liability company duly organized under the laws of the Commonwealth of Pennsylvania which maintains a principal office at 500 Old York Road, Jenkintown, Pennsylvania 19046 and operates three licensed medical marijuana pharmacies where marijuana is sold to individuals who have been lawfully prescribed medical marijuana.

6. At all times relevant hereto Defendant, Christine Visco ("Visco"), held the title of Chief Executive Officer of TerraVida, and on information and belief, was an owner of TerraVida, which at all relevant times hereto she operated without regard to sufficient capitalization and suretyship, failed to adhere to corporate formalities, substantially intermingled corporate funds and revenue for her personal affairs and generally acted without corporate formalities or established business practices and instead, operated the company and directed its employees such as the Plaintiff in accordance with her own whims and personal desires.

7.      Visco is sued both her individual capacity for her use of and actions undertaken as an owner of TerraVida and as its Chief Executive Officer. At all times relevant hereto Visco resided at 7 Chesney Place, Erdenheim, Pa. and maintained as the principal place of her business of TerraVida 500 Old York Road, Jenkintown, Pennsylvania 19046.

**IV.    FACTUAL BACKGROUD:**

8.      Prior to his employment by the Defendants, Donato served as a duly sworn police officer and Detective employed for 30 years by the Lower Merion Police Department, and he is a licensed Private Detective.

9.      For several years prior to his employment by the Defendants, Donato was employed by Main Line Protection Services ("MLPS"), a company that provides security guards, systems, and services to individuals and businesses.

10.     In October or November of 2017, Defendants entered into a contract with MLPS for MLPS to set up and provide security services for the three pharmacies Defendants were in the process of opening in Bucks, Montgomery, and Chester Counties.

11.     Thereafter MLPS assigned Donato to direct and oversee the setup of Defendants' security system and the staffing of security personnel at each of Defendants' pharmacies as they opened.

12.     Donato's assigned duties for MLPS included being the onsite representative of MLPS and to supervise the security officers MLPS provided to TerraVida in compliance with state regulations, including those assigned to the monitoring of the security cameras and alarm systems, and to respond to situations that would otherwise require the involvement of local law enforcement, including attempted thefts and employee dishonesty.

3

13. During time TerraVida was in the process of setting up operations at each of its three locations, Donato reported to and was directed by MLPS in the duties he was assigned by MLPS to perform.

14. Between February and May of 2018 Defendants opened each of its three medical marijuana dispensaries, beginning with Sellersville in mid-February, Abington in April, and finally, Malvern in May of 2018.

15. As each store opened for business each location required ongoing maintenance and facilities management, and Defendants needed to purchase product from suppliers, hire staff to conduct the business of filling prescriptions for customers, securing the product, and accounting for cash receipts which had to be deposited into bank accounts.

16. From the outset of operations through sometime in June of 2018, Visco and two of her partners who held minority ownership interests in TerraVida, Adina and Val Gorski, personally performed most of the tasks that arose and were required to be performed to get the business up and running and fully operational, from the smallest of manual tasks to the handling of large sums of cash which needed to be counted, documented, and deposited for the business, and Visco directed the two other active partners.

17. As the number of locations opened increased Donato's responsibilities increased as the number of security personnel MLPS provided to serve at each location increased, requiring Donato to oversee the operations at each of the locations.

18. On information and belief, as the three dispensaries began to conduct business Visco accomplished the buy-out of the other two founding partners and Visco became responsible for ensuring that all functions performed by her former partners continued to be performed.

19. Visco began to request Donato to perform tasks that had previously been the responsibility of Visco's former partners as well as duties that she no longer wished to perform and those for which a need was only then being recognized.

20. In June of 2018, Visco asked Donato to meet with her to discuss additional tasks which she needed to have performed and wanted to be part of his oversight of security at the three locations, including the handling of security when deliveries of medical marijuana product to each of the stores occurred, inventorying the product received, documenting the accuracy of its invoices, and overseeing the storage of the product, duties that were outside the scope of his employment with MLPS.

21. On or about June 26, 2018, after Visco had secured the buyout of her original partners, Visco advised Donato that if he obtained the agreement of MLPS to allow him to be hired and work directly for Defendants she wished to hire him to serve as Defendants' Director of Security, offering after some discussion to pay him the sum of $75,000.00, indicating that he would be reporting directly to her.

22. After Donato obtained the agreement of MLPS to accept the new employment offered by Visco, he accepted Visco's offer of employment as Defendants' Director of Security, earning $75,000.00 per year, which based on a 40-hour work week, was approximately $36.00 per hour.

23. Shortly after his acceptance of employment with TerraVida, Visco began directing Donato to perform duties that were clearly outside the scope of those intended and agreed to be performed by Donato as the Director of Security.

24. Visco acknowledged that she would need to hire a Facilities Manager if Donato did not perform the requested tasks and she delayed hiring any additional personnel to handle facilities

5

for a substantial period of time, making Donato perform the work those duties entailed in addition to his own.

25. While Donato's official responsibilities as Director of Security included oversight of the security officers that were assigned to the doors of each facility and in a camera room that housed monitors for the cameras that covering all of the dispensary operations, those security officers were hired and worked for MLPS which continued to provide to TerraVida with security officers under its contract with TerraVida.

26. Donato's oversight of the operation of the 24-hour surveillance systems at each location required that he be on-call to handle any security related issues that might arise after hours, as well as investigating any breaches in protocol, rules and regulations the pharmacies were required to follow by law.

27. In addition to those expected duties, Visco instructed and expected Donato to perform any of the tasks that arose at each of the facilities which had previously been performed by one of her former partners or that had not existed until all of the sites were fully operational.

28. The additional duties Visco expected Donato to perform were often those that would otherwise fall within the duties of a Director of Facilities or assigned to individual site managers, including the cleaning and maintenance of the stores, inventorying and stocking of product, accounting for and securing received revenue, scheduling and paying product suppliers, confirming the accuracy of deliveries, making deposits of revenue into bank accounts, paying other vendors, and filling the six ATM machines that Defendants independently operated its pharmacies, allowing Visco hired unskilled labor to work at the pharmacies for cash and to perform minimal duties.

29. Within in a short period of time it became clear that Visco would ask Donato to take care of or perform anything she desired including those related to her personal needs and those for which she had failed to hire or assign any appropriate personnel, or which would otherwise have been her personal responsibility.

30. At all relevant times Visco was in treatment for one or more medical conditions which permitted her to purchase and use medical marijuana and she regularly acquired her marijuana from Defendants' inventory, including at times when she was out of state for extended period of time.

31. One of the personal duties Visco regularly had Donato perform was transporting cash to various third parties at her direction, often being given little or no explanation of the purpose or use of the funds sufficient to document in Defendants financial records.

32. At all times relevant hereto TerraVida employed the services of CPA, Robert Godschalk, to provide accounting services and directions on the accounting of the large amounts of cash Defendants regularly received and were obligated to account for.

33. Donato relied on Defendant, Visco and CPA, Godschalk with respect to the classification of his employment, the calculation and payment of his wages, bonus, and raises.

34. On information and belief, Godschalk was fully aware of the nature and scope of Donato's employment, the various tasks that he was regularly asked by Visco to perform, and the number of hours that he worked and relied on the accountant's direction with respect to payment of his wages, reimbursement of expenses, cash accounting for the Defendants' revenue, and how he was to undertake and document the financial transactions he was charged with overseeing on behalf of TerraVida, substantially all of which was done in cash.

35. Because Donato was required to travel between Defendants' Sellersville, Abington, and Malvern stores, as well numerous daily trips to Defendants' bank, and to the location of Defendants' investors, Visco instructed Donato to lease a vehicle in his name, for which Defendants provided a Six thousand dollars ($6,000.00) down payment and thereafter reimbursed Donato for the Two hundred dollar ($200.00) per month lease payment, the cost of insurance, tolls, gas, and other expenses.

36. In order to perform all of his assigned duties, including the additional duties and tasks he was regularly asked to perform Donato worked between 70 and 90 hours per week, averaging approximately 80 hours per week and other than legal holidays when the stores were closed, Donato only took two days off up to the time of the termination of his employment.

37. Donato was also required to be "on call" 24 hours per day to handle any matter that would otherwise require Defendant to call for assistance from law enforcement or require the presence of Visco or someone else from management.

38. Donato was not permitted to hire any staff to assist him to perform any of his duties and tasks, nor did he have the authority to hire or fire any employees of the Defendants.

39. All of the legal requirements, regulations, operational rules and procedures for the operation of Defendants' medical marijuana dispensaries were provided by the Pennsylvania Department of Health and overseen by that state agency.

40. The actual duties of the Director of Security position for the Defendants' pharmacies and that had been previously performed by Donato were in large part the types of duties that might otherwise be handled by police officers, armored car security guards, bonded clerks, and messengers, for which Donato was qualified by his 30-year career as a Lower Merion police officer and detective.

41. In April 2019 Visco hired one of her friends, Cathy Cashman ("Cashman"), to serve as Defendants' Vice President in charge of Operations, advising Donato that although he was to report to Cashman who would technically be his supervisor, he should continue to take his orders from Visco.

42. Although Visco told Donato that he was to report to Cashman and to follow her instructions, Visco continued to direct Donato's to perform activities outside the scope of his security position and repeatedly told Donato that regardless of what Cashman said, he was to continue to do whatever Visco instructed, including being "on call" for her personal needs, including delivering food to her home for her lunch.

43. Although Cashman sought change and reduce the duties Donato performed and the manner that duties he had performed were done, Visco continued to require Donato to perform any duties she desired.

44. Whenever disagreement arose between Donato and Cashman, Visco would tell Donato in front of Cashman that he was to follow Cashman's instructions, while assuring Donato in private that he should continue to listen to Visco and just try to get along with Cashman.

45. In October 2019 Visco hired another one of her friends, Molly Dunn-Binder ("Dunn"), who was given the title Chief Financial Officer, and again advised Donato that the CFO would also technically be his supervisor, but that he should continue to take his orders from Visco.

46. Thereafter Dunn instructed Donato that expenses and other payments were to be made by check issued by the company and that Visco's practice of ordering cash for payments should not be continued.

47. In addition to Dunn, Visco hired Bill Shapiro ("Shapiro") to handle procurement of non-product supplies and equipment.

48. As with Cashman and Dunn, Shapiro was brought in to handle tasks and duties that Visco had directed Donato to perform, and despite the hiring of these management level employees, Visco continued to direct Donato on things she wanted him to do and instructed him on how they were to be done, often causing friction between Donato and the managers to whom he was to report.

49. During his employment with Defendants Donato was not asked to record the amount of time he worked or the activities he performed, and on information and belief Defendants did not maintain any time records or other records required for his employment.

50. At all times during his employment by Defendants all expenses Donato incurred were reimbursed by Defendants.

51. At the end of each year Donato worked for Defendants, or shortly after the start of a new calendar year, Donato received increases in his wages as well as bonuses.

52. On information and belief, Defendants and their Certified Public Accountant chose to classify Donato as an independent contractor despite the fact that under applicable state and federal laws and regulations Donato was clearly an employee, and at no time did Defendants withhold state, local or federal taxes of any kind from Donato's wages and only provided Donato with a 1099 at the end of each year.

53. While he was employed by Defendants Donato did not perform work for any other employer nor engage in any other business.

54. From July 2018 to July 4, 2020, Donato took a total of two vacation days.

55. On July 4, 2020, Visco requested that Donato bring her lunch at her home and while he was there, Visco suddenly and without warning flew into a fit of rage and terminated Donato's employment, citing false and pretextual grounds.

## COUNT I - FLSA

56. Plaintiff Frank Donato reasserts and realleges the allegations set forth in paragraphs 1-55 as if they were fully set forth herein.

57. The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce or employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(2).

58. At all times relevant, Defendants were Donato's "employer" as defined by and pursuant to FLSA.

59. At all times relevant, Donato was an "employee" as defined by and pursuant to FLSA.

60. Defendants knowingly and intentionally misclassified Donato as an independent contractor when in fact they knew that he was a non-exempt employee under the FLSA.

61. The FLSA requires employers to pay employees overtime compensation of 'not less than one and one-half times' their regular rate of pay for all hours worked over 40 in a work week. 29 U.S.C. § 207(b)(2)(c).

62. Defendants encouraged, suffered and permitted Donato to work more than forty (40) hours per week without providing overtime compensation.

63. Defendants knew the hours that Donato performed work on their behalf and that they were required to pay him overtime compensation.

64. Nonetheless, Defendants knowingly and intentionally deprived Donato of overtime compensation by failing to properly classify him in accordance with the applicable state and federal

laws which require that he be paid the proper amount of wages for all time worked with all required deductions reported by the issuance of a W-2.

65. Defendants willfully violated the FLSA by failing to pay Donato overtime compensation for the overtime hours worked in excess of 8 hours per day and 40 hours per week.

66. Defendants' conduct, as alleged herein, was willful and caused significant damage to Donato.

67. Donato's damages are at least $1,620 per week ($54 per hour x 30 hours) for every week he worked in the three years preceding the date of this Complaint, including from July 5, 2018 to July 4, 2020, which is $84,240.00 per year for a total of $168,480.00.

68. Based upon the foregoing, Defendants are individually, jointly and/or severally liable to Donato.

69. Defendants are also responsible for liquidated damages in an amount equal to Donato's actual damages.

70. Defendants are responsible for payment of reasonable attorneys fees and costs associated with the prosecution of this action.

WHEREFORE, Plaintiff Frank Donato respectfully requests that this Honorable Court: 1) declare that Defendants' conduct as set forth herein and above constitutes a willful violation of the FLSA and 2) award Plaintiff Frank Donato back pay wages and/or overtime wages, liquidated damages, attorneys fees and costs, pre-judgment interest, court costs as well as any and all additional general and equitable relief to which Plaintiff is entitled by law.

## COUNT II – PaMWA

71. Plaintiff Frank Donato reasserts and realleges the allegations set forth in paragraphs 1-70 as if they were fully set forth herein.

72. The PaMWA requires employers such as Defendants to pay employees overtime compensation of 'not less than one and one-half times' their regular rate of pay for all hours worked over 40 in a work week. 43 Pa. Stat. 333.101-333.115.

73. Under PaMWA an "employer" includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relations to any employee. 43 Pa. Stat. 333.102.

74. An "employee" includes nay individual employed by an employer." 43 Pa. Stat. 333.102.

75. At all times relevant, Defendants were Donato's "employer" under the PaMWA.

76. At all times relevant, Donato was an "employee" under the PaMWA.

77. Defendants misclassified Donato as an independent contractor when in fact they knew that Donato was a non-exempt employee under the PaMWA.

78. Under the PaMWA employers must pay employees overtime compensation of 'not less than one and one-half times the employee's regular rate their regular rate of pay" for all hours worked over 40 in a work week. 43 Pa. Stat. 333.104.

79. Defendants encouraged, permitted, and/or required Donato to work more than forty (40) hours per week without providing overtime compensation.

80. Defendants knew or had no reasonable belief to the contrary, that Donato performed work that required overtime compensation.

81. Nonetheless, Defendants deprived Donato overtime compensation by failing to properly compensate him for all time worked.

82. Defendants' conduct, as alleged herein, was willful, not in good faith, and in reckless disregard and caused significant damage to Donato.

83. Donato's damages are at least $1,620 per week ($54 per hour x 30 hours) for every week he worked in the three years preceding the date of this Complaint, or from July 5, 2018 to July 4, 2020, or $168,480.

84. Based upon the foregoing, Defendants are independently, jointly and/or severally liable to Donato.

85. Defendants are also responsible for liquidated damages in an amount equal to Donato's actual damages.

86. Defendants are responsible for payment of reasonable attorney's fees, costs and expenses associated with the prosecution of this action.

WHEREFORE, Plaintiff Frank Donato respectfully requests that this Honorable Court: 1) declare that Defendants' conduct as set forth herein and above constitutes a violation of the PaMWA, and 2) to award Plaintiff Frank Donato back pay wages and/or overtime wages, liquidated damages, attorneys fees and costs, pre-judgment and post-judgment interest, court costs as well as any and all additional general and equitable relief to which Plaintiff is entitled by law.

### COUNT III - PaWPCL

87. Plaintiff Frank Donato reasserts and realleges the allegations set forth in paragraphs 1-86 as if they were fully set forth herein.

88. PaWPCL 43 P.S. § 260 et seq., requires employers, among other things, to pay to employees' wages and agreed-upon fringe benefits within the regular pay period in which the wages were earned.

89. The unpaid compensation Defendants failed to pay Donato is considered wages under the PaWPCL.

90. Defendants violated the PaWPCL by failing to pay Donato overtime compensation for hours he worked in excess of 40 hours/week at the time said wages were earned and otherwise due and payable.

91. Based upon the foregoing, Defendants are independently, jointly and/or severally liable to Donato.

WHEREFORE, Plaintiff Frank Donato prays for this court to 1) declare that Defendants' conduct as set forth herein and above constitutes a violation of the PaMWA, and 2) award Plaintiff Frank Donato the value of back pay wages and/or overtime wages, fringe benefits, liquidated damages, attorneys fees and costs, pre-judgment and post-judgment interest, court costs as well as any and all additional general and equitable relief to which Plaintiff is entitled by law.

### COUNT IV-UNJUST ENRICHMENT

82. Plaintiff Frank Donato reasserts and realleges the allegations set forth in paragraphs 1-91 as if they were fully set forth herein.

83 At all times relevant, Defendants by their policies and practices, benefited from, and increased their profits by failing to pay overtime wages earned and due to Donato for the hours he worked.

84. Defendants accepted and received the benefits of the work performed by Donato without compensating him for said work.

85. Defendants' retention of such benefits would be inequitable.

86 Based upon the foregoing, Defendants are independently, jointly and/or severally liable to Donato.

WHEREFORE, Plaintiff Frank Donato prays for this court to award Plaintiff Frank Donato the value of Defendants' unjust enrichment including back pay wages and/or overtime wages, as

well as liquidated damages, attorneys fees and costs, pre-judgment and post-judgment interest, court costs as well as any and all additional general and equitable relief to which Plaintiff is entitled by law.

                      Respectfully submitted:

                      *Jeffrey P. Hoyle*
                      JEFFREY P. HOYLE, ESQUIRE
                      *Attorney for Defendants*
                      Attorney ID.: 41788
                      THE LAW OFFICES OF JEFFREY P. HOYLE
                      1100 North Providence Road, Suite 200
                      Media, PA 19063
                      484-443-2404
                      jph@jphoylelaw.com

<u>DATE</u>: 06/28/2021